Thank you, Your Honors. As I said, my name is Andrea Fernandez-Jackson of Jackson Law on behalf of the appellant, Melissa Magana. Prior to starting, I would like to reserve five minutes for my rebuttal. I'll try to remind you, but also if you could watch the clock, that would help. Yes, Your Honor. Your Honor, this case turns on the simple issue of whether wait an hour claims and meal and rest break claims address the same rights as suitable seating claims for purposes of California res judicata law. Apparently, California courts have not addressed the issue. Despite best effort, appellant could not locate any published or unpublished case directly on that issue. However, in 2019, this court directly addressed the issue in a memorandum called N. Ray Walgreens. This court said, no, they do not address the same rights. N. Ray Walgreens is a case that has strikingly similar facts to the present case, and that- Isn't that case an unpublished case? Yes, Your Honor, but pursuant to rule 60, circuit rule, excuse me, pursuant to circuit rule 36, an unpublished case can be used for persuasive authority. And this case is certainly persuasive because the case in N. Ray Walgreens is strikingly similar to the case, the facts of this present case. In that case, there was a prior wage and hour class action in which both wage and hour claims were alleged, as well as meal and rest break violations. There was a settlement, and in that settlement agreement, there was a release. That release precluded all class members from participating in any future PAGA actions. A unnamed class member named Ms. Zamora, she filed her subsequent claim for suitable seating, pursuant to the PAGA and state court. The district court enjoined her from doing so, pursuant to the terms of the settlement agreement. However, this court reversed, holding that that was an abuse of discretion because first, that term in the settlement agreement precluding any and all PAGA participations by any of the class members was invalid because suitable seating claims did not have the same factual predicate as the wage and hour and the meal and rest break violations. But this court went on to make it a whole, excuse me, went on to make an analysis pursuant to res judicata, that those claims, that suitable seating claims would also not be barred by res judicata. And it's important to note, because I could foresee my respondent bringing this up, courts of different jurisdictions apply different tests when evaluating whether res judicata apply and evaluating the first element of whether the claims are the same. Federal courts, including the Ninth Circuit, use the factual predicate test. Court looks to the factual nucleus of the claim, whereas California employs the primary rights test, in which courts look to the rights being addressed by the claims, or as the California Supreme Court has held, the determinant factor is the harms being addressed. Now, in Inmate Walgreens, that court addresses both claims. Specifically, the court held that wage and hour and meal and rest break claims do not involve the same claim or cause of action because they do not arise from the same transactional nucleus of facts or involve the purported infringement of the same rights. This court already made the analysis, the wage and hour and meal and rest break claims address different rights than suitable seating claims for purposes of res judicata in California. And the court was right. The court in Inmate Walgreens got it right because just from a commonsensical standpoint, wage and hour claims address unpaid wages or the rights to be paid owed wages or rights related to wages. Yes, sir. Transactional nucleus of facts, that California's res judicata test? So the transactional nucleus of facts is the federal court. And so that, the only, Inmate Walgreens, I think, addressed both claims or both tests because Inmate Walgreens, the first claim was brought in federal court. The subsequent claim was brought in California State Court. And this court addressed both tests, which it addresses both the nucleus of facts, which is federal and the primary rights. It specifically says they do not arise from the same, excuse me, they do not involve the same purported infringements of the same rights. And that's really the most determinative factor in determining whether these claims. I think the potential issue here is if that were a published opinion, it would be bound, but it's not. It only has persuasive value. And unfortunately, that opinion really didn't include any analysis of primary rights. I'm not sure if that's any real value here because the court didn't explain the reasoning here in that. So, I mean, if we can get into the rest break, I agree with you, that seems like it's a kind of wage-related claim or harm, but what do we do with the California Supreme Court case, Kirby, where it has some language that suggests that meal and rest break claims aren't wage, but it's about health and safety? Yes, Your Honor, and I believe that wage now, or excuse me, meal and rest break claims fall under the same wage order. It's wage order seven, which is the wage order that controls the conditions of the workplace in the mercantile industry. That is just an abstract thought, whether that these, that meal and rest break claims fall under the same statute as suitable seating claims. And the California Supreme Court first said, no, that we don't look to the statute. It's indeterminate when we're considering whether res judicata applies. We do not look to the statute. We don't look to the legal theory being advanced, whether it's statutory or common law, we look to the harms being addressed. They're separate harms. Even meal and rest break claims address the rights to be, an employee's rights to take meal and rest breaks after a certain time period into their shift, whereas suitable seating claims address an employee's rights to not have to be subjected to standing the entire shift. They're just different rights. That's even from a common sense standpoint. But the fact that they fall under the same statute and they both fall under the conditions of the workplace kind of leads to a logical fallacy. It's basically saying that all cats are mammals, all dogs are mammals, so therefore all dogs are cats. They're not the same. And so, and for this court to make such a ruling would require a broad sweeping ruling in which every claim that's brought under the wage order precludes any future claims. There's hundreds of claims that fall under that wage order that address the conditions of the workplace. So just to be clear, counsel, it sounds like your argument is that all of those would involve a different primary right. So we already know that like, let me just elaborate on that a little bit. We do know that different kinds of wage claims, there's precedent to say that different kinds of wage claims that actually involve wages fall under the same primary right. So it's possible if certain wage claims were brought and you try to bring a later wage claim that you would be, that race judicata would kick in. But it sounds like your view is that the same thing isn't necessarily true for non-wage and hour employment claims. You view those as all different, each one. So under the wage order seven, so you obviously have your seating, you have your, but you would have all of the other types of claims you could bring under that would all be separate, all be an individual. You could just bring serial cases with those or is that not your view? My view is that under the California primary rights test, the courts would look to the rights or the harms being addressed. There are under California wage order seven, actually meal breaks, I believe is subsection 12 and rest breaks is subsection 13. They come under different subsections, but I would say that those two claims address the same primary rights of being entitled to either being an employee being having the right to take a break or being entitled to premium wages if those breaks were either interrupted or missed. And so under that situation, both of those claims are the same, even though they don't fall under the same statute. I mean, are you saying that because of Villickers? Like, I think I'm saying the same, right? Is that right? Like Villickers, but I'm not sure, would you reach that conclusion based off of, like if Villickers wasn't out there, are you saying that because of Villickers? Well, Villickers talks about wage claims and in Villickers, that court declined to make such a broad decision. That court declined to address the issue of whether all these claims are the same harm, same rights, or if it should. Your honor, I see that my time has ended, my 10 minutes and I would like to reserve the rest for rebuttal. And let me know if you have any questions. Debra, why don't you make sure you fully answered? Then I'll give you five minutes for rebuttal. Thank you, your honor. Yes, so under Villickers, the problem with Villickers is there's three issues. One is that, first of all, it only addresses wage and hour claims. Secondly, it employs the wrong test. California Supreme Court invoking, which came out around the same time as Villickers, held that the standard is, we look to the primary rights, not whether the cases could have been brought. So the defense counsel, your position is that Villickers just wrongly decided we should ignore it, it's an outlier. We shouldn't try to somehow reconcile it with the rest of the California's law. It sounds like that's what you're saying. Is that right or not? Yes, your honor. And Villickers court- Let me ask you a follow up question. If that's the case, I mean, the problem is that the California Supreme Court didn't do that, right? They had an opportunity to do that in the, I think the Raines case, and they admittedly, they didn't embrace it, but they distinguished it. So I don't, how, what are we supposed to just ignore it when the California Supreme Court didn't dismiss it? It has the same weight as in Ray Walgreens. It came from, it's a district case that came from a different district than the present case, one. And two, it, the court in Villickers narrowed its holding to the facts of Villickers, which addressed wage hour claims and a subsequent lawsuit that addressed the same wage hour, wage and hour claims, plus additional ones. It did, it just simply doesn't apply here. There's- They're not, the additional ones are only, I mean, there's admittedly that Villickers itself treated them like they're wage and hour claims, but the California Supreme Court has said that they weren't wage and hour claims, the additional claims in the follow-up case. So, I mean, it's a tough, I admit, it's a tough, it's tough to know what to do with it, but as you can imagine, telling us to just ignore it when it seems to be the most, the closest on point, as you said earlier, there's not an on point case, unfortunately. So, except for Walgreens- Except for the case that this court blessed us with. Except for Walgreens, which doesn't, which seems like it's possibly only deciding it based on, like may have actually have an error in it. But in any event, it's not, Walgreens doesn't give any analysis. Villickers gives some analysis, but it's tough to know what to do with it, I guess. I guess I can ask your colleague. Can I? Counsel, you're technically down to two minutes, but why don't we end your argument? I'll give you five minutes on Rapallo. I appreciate that. Thank you, Your Honor. Let's change Ms. Fernandez-Jackson's time for five minutes on Rapallo. Then we'll proceed with Mr. Rosenthal. And Mr. Rosenthal, because I've given your worthy opponent a little extra time. If you need more time, you can probably get it from me too. Thank you, Your Honor. May it please the court, Adam Rosenthal, Shepard Mullen, Richter, and Hampton on behalf of defendant and appellee Zara Usain. Your Honor, the district court properly dismissed plaintiff's lawsuit on the grounds that as a member of the Paz v. Zara class action settlement, plaintiff not only released her single cause of action lawsuit under asserting a PAGA claim based on the alleged violation of wage over seven, but that plaintiff and the state of California already received compensation from that lawsuit. Before we jump into the legal issues, I think it's important to take a step back and look at the bigger picture at play. A finding for plaintiff here would not only run afoul of California contract law and res judicata application, but it will open the floodgates to successive wage and hour lawsuits where an employer has already settled a case. Now, there may be a healthy debate as to whether the merits and perceived benefits, certainly serious drawbacks of wage and hour class actions, but there's no dispute that once a lawsuit is settled, monies are paid, and that is after a court, district court, or in this case, a superior court had blessed the settlement. There are no further claims that can be alleged where there is a broad release as there is exists here. Finality and res judicata are the benefit of the bargain for an employer. That is what they buy. They buy peace, they buy finality. Allowing plaintiffs to proceed here and other plaintiffs in other future cases would be an anthem to the very purpose of class action settlements. If we're going to allow employees to bring wage and hour class actions, then the rules have to allow employers to buy peace. Without that, the whole system crumbles like a house of cards. Now, getting to the merits of the issues before the court. First, I want to look over the fact that we don't even have to get into a res judicata analysis. The court can affirm the district court purely on contractual grounds. Where a contract contractual term is unambiguous on its face, particularly a settlement agreement, which under longstanding jurisprudence in California and within the circuit, settlement agreements are deemed contracts. Where it is unambiguous on its face, the court only need to look at what does the contract say. Here, section 24 of the Paz settlement is unequivocal that it's releasing all claims of for paga civil penalties under the California Labor Code and wage orders during the class period. That class period is March 14 to January 19. The plaintiff in this lawsuit worked during the class period and therefore settled all claims. We don't even have to jump to res judicata, although we certainly will get there. But purely on contractual grounds, section 24 of the settlement, along with section 37, the longer release, clearly cover everything related to plaintiff's wage and hour claim relating to civil suit. Counsel, I have a question. Question for you. Yes, Your Honor. Could the plaintiff in this class action case, the earlier one, could they have carved out the rest breaks, or seating breaks, rather, suitable seating claims? Could a member of the class have objected and came to carve out of suitable seating claims from the scope of that release if the plaintiff counsel didn't do it? Certainly, a member of the class, including Ms. Magana, could have brought an objection, could have sought to raise the issue after preliminary approval and before final approval. There was no dispute here in the evidence, although, curiously, in the reply brief, there's an allegation that perhaps the plaintiff didn't receive notice of the paused settlement. We know that not to be true because her own declaration doesn't say that. The declaration from the third party claims administrator is on point that not only was a notice sent to the plaintiff, but also a check was received by the plaintiff. But certainly, parties can, and in this case, they did have an explicit carve out of the settlement. And in the paused case, the explicit carve out concerned an issue of the calculation of the regular rate of pay, a nuanced issue of overtime determinations. So that is there. Now, a paused settlement, of course, your honors, in section 24 of the release is pretty profound. The trial court, the superior court, had the opportunity under the paused statute, under the California legislature had given the superior court the opportunity to review a class action settlement and a paused settlement. In fact, the superior court has ultimately carte blanche in reviewing and determining the sufficiency of a settlement, of a paused settlement. That is what happened here. And in signing off on the settlement, the class action settlement paused, including the paused settlement, the court did what it's allowed to do under the paused statute. Going one step further, if your honors are inclined to get into a res judicata analysis here, want to be clear, we're talking about the right test. And here again, my colleague on the other side, both at the district court and in the papers before your honors has conflated the federal test, the identical factual predicate test with the California test. While conceding, certainly, that because this case sits in diversity, California res judicata analysis applies. There is no question about that. And that's longstanding. There are no two tests. There's one test that your honors have to look at. So what does that test say? If we're looking at res judicata, the question here is, is the subsequent claim within the scope of the previous action? Well, certainly, the suitable seating claim was in the scope of the paused action because the paused action explicitly addressed wage order seven. It explicitly referenced labor code section 1198, which is the connection. It's the tether between the suitable seating claim and the PAGA statute. Number two, was it related to the issue? Absolutely. There were non-exempt employees who had the ability to bring claims related to the terms and conditions of their employment. Don't we have to use the primary rights analysis here? Absolutely. That's a hundred percent. And if you look at it here, I mean, it seems like the paused case was really about wage payments. I know there's the rest and lunch break claim, whereas this claim is about suitable seating, which seems to be more about conditions of labor. And the meal and rest break claim, I mean, it seems that's really about not being paid that you were working. You should have gotten your, a 15 minute break for every four hours you worked. So it seems like there are different harms, different rights involved between these two cases. Your honors, it's the same issue. It's the same underlying primary right, which is the terms and conditions of your employment. To be clear, an allegation of failure to pay meal period premiums or rest period premiums is not a wage. It's well settled in California law in the Kirby case that it is. Is that potentially a different context? And that was about attorney's fees. I know the California Supreme Court had a lot of language about, this is about health and safety, which I don't know, a 15 minute break for every four hours you work is really a health or safety, but ultimately it was about a stash or construction issue of attorney fee issue. Here in Res Judicata here, it's a little bit bigger picture issue. So does Kirby really actually, really foreclose that here? Absolutely, it's the other side of the same coin. That the very, the notion here to, this assertion that it's a wage and hour case only, the pause is only about payment of wages, is undermined by how much money was devoted to penalties. The vast majority of the amount of the settlement in the pause case that went to the settlement class members in excess of $700,000 was for penalties. We are talking about penalties here in this case. But more to the point, the same underlying allegation was brought in both claims. That is a violation of labor code section 1198 and wage order seven. Well, counsel, can I, just to sort of piggyback a little bit on Judge Lee's question, ultimately, so you just said the same thing was brought in both cases, wage order seven. Well, but that's sort of like begs the question of, you know, wage order seven does a lot of stuff, right? And these happen to both be under it. And that seems to me to be the difficulty with California's primary rights analysis is it's very malleable. I think I found some, there's some language from, in the California courts themselves about that. It depends on, you keep calling it the conditions of employment, which is a very, you know, it's not necessarily bad, but it's a very broad view of what is the primary rights. I think your opponent would consider the primary right to be the right to have seating when it's not a core part of, you know, standing is not a core part of your job. So all this depends on how broadly you define the primary rights. So here's, it seems to me, if that's right, I think it is, then what it kind of turns on is what the California courts have thought as far as how broadly we should define that primary right in this context, I guess. And that's, I'd like to hear both of you talk about that some, because at the end of the day, you can both sit and talk past each other about, no, it's the big primary right. No, it's a little primary right. But at the end of the day, what are the California courts say about, you know, Judge Lee was just expressing a concern about, you know, you got this, all this stuff about wages and I could see where that would be one primary right, but then you got non-wage stuff. And that does, it's not crazy to say that would be a different primary right. And there seems to be some support for that. And you got Villickers, which at least if you, you know, read it in light of Kirby, would say that maybe you throw some non-wage and now we're stuck in the same primary right. So help us try to figure out like where the California courts are, as far as how broadly we should construe the primary right in this context. Sure. First, as a threshold matter, the very fact that the single seating claim is being brought pursuant to Labor Code 1198 and under the POGIS statute is the answer, I think to your question. That it is not in a separate area of the government code. For example, if I were to stand before you, Your Honor, and say, because of this settlement, Ms. McGonigal cannot bring a retaliation claim. Well, I wouldn't make that argument because that would not be a sensible argument. The settlement and the pause didn't cover claims under the Fair Employment and Housing Act or other sections that apply to employees and an employer relationship. It covered the wage and hour, the purview of wage and hours, which includes suitable seating. The statute, again, which she's relying on, is 1198. And that's the same statute which was at issue and paused and settled in a broad settlement. Specifically, then, to go further to your point, Your Honor, Judge Van Dyke. The Villacrest case is directly on point. And to be clear, the Rangel case, which is a published Ninth Circuit decision from 2018, cites favorably to Villacrest. So the assertion that Villacrest is somehow an outlier, which has been cited by this very court and numerous district courts within California, proves the point that it is very much a proper application of res judicata analysis. And recall that in Villacrest, the first case, there was no settlement of PAGA. There was no mention of PAGA. And yet, yet, the Court of Appeals said, we see this all as the same underlying claims, both wage claims and penalty claims. In addition, the Shine v. Williams-Sonoma case, another California case that is very much on point to the question of can the Superior Court bless a broad settlement when a claim was not before it? And there in Shine, relying on numerous circuit decisions, found absolutely, that's the whole point of a class action settlement, buying peace and finality means that when Judge Cohn in San Bernardino Superior Court blessed the PAWS settlement and signed off on it, granting final approval, that Zara had the right to rely on that, that all wage and hour claims, all claims under the wage order, which suitable seating is. And also, can I ask you a question to address something that your colleague, your opponent, mentioned? I think she said that Villickers, some of these other cases, because they're from a different Court of Appeals, then I guess would be over the area where this case was at, that that's not, that we shouldn't consider whatever we interpret Villickers to be the binding law, but I guess would just be kind of like an unpublished opinion, would just be something we look at as persuasive, not precedential. Is that, do you think that's correct? Absolutely not. Argue in California State Court all the time, and you can rely on any appellate court decision from any of the districts. The idea that you could only cite to and rely upon decisions. I guess it wouldn't be, if you were in one Court of Appeals, a decision from another Court of Appeals wouldn't be binding in that other Court of Appeals. It'd just be, it'd be. It's absolutely binding. If it's a published decision, then it's binding. And a California Court of Appeal, like the Ninth Circuit, doesn't publish all the decisions, precisely for that same reason. It's the same reason why the Zamora-Walgreens case wasn't published, because there, I know I'm running out of time, but if I may, the Zamora case, as Your Honors pointed out, not only doesn't do an analysis of, frankly, much, but particularly it misses and ignores the applicable res judicata analysis, where the Rangel case, published decision from 2018 out of your Court, certainly addressed the California primary rights theory and found that the subsequent lawsuit was barred. Counsel, I think, technically, your time is up. As I said earlier, if you needed more time, you would get it, but I haven't heard a request. So I'll ask my other panel judges. Does Judge Lee or Judge Van Dam have a question? If not, we'll go back to Ms. Fernandez-Jacks. Thank you, Your Honor. Simon, one thing I'd appreciate your addressing during your rebuttal is this. I apologize if my question just shows I don't fully understand the case, but if the language of the release is clear, under the release, these claims are released, why do we have to wrestle with res judicata? Yes, Your Honor. And related to that, the corollary is, tell us your client, get around the language of the release. Yes, thank you, Your Honor. To address Judge Cole's question regarding the release, first of all, the release is a contract and we read this contract as a whole. While, yes, respondents kind of, I guess, cropped out the language that's beneficial to them, but as a whole, the language of the release is peppered with that all of these claims are gonna be released based on the facts alleged in the action. The facts alleged in the action. And that's at excerpt record, excerpt of record 894 starting at lines 13. And the release says, makes a broad release to PAGA violations, and then it uses this qualifier, but PAGA violations, there's no such thing as PAGA violations. PAGA is simply a vehicle to bring claims on behalf of the state. There's no such thing as violations of PAGA, so that term is invalid on its face. But more importantly, the release is just limited to the claims that were alleged in the action. No suitable seating claims were alleged in that action. Therefore, even the district court didn't buy the argument that there was some type of release to Ms. Magana's claims. And that argument just fails to the wayside. I did wanna address the point that Justice Van Dyke made in terms of binding authority. Village Acres is absolutely not binding authority. It's from a different district. California, binding authority comes from the same appellate district, but if that ruling comes from a separate one, that ruling is just nearly persuasive. It is not binding. It's interesting to me, counsel, if you're in California courts, but how do we apply that? Are you saying because it's in a different district than the state lower court where this was originally brought before it was removed? Is that what you mean, when you say different? Yes, yes. Yes, but even so, like my colleague said, district courts that are applying residue de plata and that sit in diversity apply the residue de plata law to the form state. In this case, it's California. District courts look to California's binding authority which on residue de plata, which here it's the Bocan case. The Bocan case came down at the same time as Villa Acres. In Bocan, the court says the right, when courts are looking to the primary rights of the two claims, which is really the issue here, not whether these claims came under the same statute, not whether these violations happened at the same time, not whether plaintiff was an unnamed member of the former class. It's not whether she could have brought or objected. None of that is part of the analysis. Courts look to the primary rights of the claims for purposes of residue de plata. Here, the Bocan claim says, we look to obtain, excuse me, we look at the right to obtain redress for the harm suffered, regardless of the specific remedy sought or the legal theory. The determinative factor is the harm suffered. And that's the analysis that should have been made, which was not made by the district court. And that resulted in error as a matter of law, but not even- I'm tracking you on that. I'm gonna ask you kind of a similar question I asked your opponent. Because it says primary right is tied to the harm suffered. The problem with that is that it depends on how you characterize the harm suffered. If you characterize the harm suffered as I think you would like us to do, understandably, as being able to have seating, then obviously that's a different primary right. But if you characterize the right as to have lawful conditions of employment, obviously like your opponent would like us to do, all he's doing is just, it just depends on how general you make it. So the problem with, so I understand why everybody's focusing on the primary right, but that doesn't answer the question for me of how broadly should we do it in this context? And on that, I guess, when I read the Villickers, I don't know if I'm saying the case name right or not, but when I read that case, whether it's binding or not, what it seems to be saying to me is that it identifies the primary right pretty broadly in this context. And it does so precisely for all the reasons that your opponent has sort of been pounding on, which is they could have brought the claim. We want these settlements to work, et cetera. All those, what you might call policy reasons are reasons that it seems the court identifies the primary right broadly, but it's just only in that Villickers case, it seems like to me. So what should we do with that? I don't, don't tell me ignore it because I mean, I know I can already do that, but is there a way I can not ignore it? I see that my time is up. If you would allow me to just answer the question. In my response brief, I mean, excuse me, in my reply brief, I specifically cite to Villacrest. Villacrest court said simply put, Villacrest Paga claims were within the scope of the former litigation and were related to the subject matter and the issue and the action, which were the payment of wages and the penalties by that same employer. Villacrest court went on to say that, excuse me, the Villacrest court went on to say that it did not, it declined to argue whether the harms were the same, what it declined to make such a broad ruling, whether all of these claims under that fall under the wage order, these are labor code violations, whether they're all the same, because it's such a broad ruling. As we focus on the specific circumstances of this litigation, and you're reading that as saying, we focus on the specific facts, but a lot of what it talks about in Villacrest is, you couldn't, really to me, it seems like it mostly talks about sort of the fact that you had this kind of case that was brought, you could have brought your stuff in that case, you didn't. How do we know that that's not what it means when it says we focus on the specific circumstances? If that's the case, then the way I would characterize it is Villacrest is standing for a broad primary rights characterization in this particular type of context. That's the thing I'm struggling with. I think that the California Supreme Court last year addressed Villacrest, like I said, like you mentioned, they kind of just kind of snubbed it, but what Villacrest does, it applies the same, I mean, it applies incorrect law. The Shine case is premise on Villacrest, so the Shine case does apply, and the Rangel case addresses the same exact wage and hour. The only case that we could find that addresses these specific claims, wage and hour, meal and rest break, and suitable seating claims under the correct law is in Ray Walgreens. Like I said, this court blessed us with the answer. They do not address the primary rights, and more so, the district court didn't apply that. That finding was an error as a matter of law, so Ms. Magana requests this court allow her to pursue her suitable seating claims on behalf of herself, the state of California, and all aggrieved employees. Thank you, Your Honor. Thank you, but I think I'd like to thank counsel on both sides for their spirited and well-prepared arguments. At this point, Magana versus Zara shall be submitted. By the way, counsel, did I miss, you pronounce it Magana or Magana? Magana. Magana, but I don't think. Thank you, so thanks to all of you.
judges: Gould, Lee, Vandyke